BANKERS' & PLANTERS' MUTUAL INSURANCE ASSOCIATION
*v.* ARCHIE.

Opinion delivered October 25, 1920.

1. COMPROMISE AND SETTLEMENT—DISPUTED CLAIM.—Compromise of a disputed claim furnishes sufficient consideration to uphold the terms of a compromise, though the asserted claim is without merit and could not have been sustained in the courts.

2. COMPROMISE AND SETTLEMENT—FRAUD.—The mere fact that a compromise was made by the agent of an insurance company with an illiterate negro does not warrant the submission to the jury of the issue of fraud in procuring the compromise.

Appeal from Conway Circuit Court; *A. B. Priddy,* Judge; reversed.

STATEMENT OF FACTS.

Ed. Archie brought this suit against the Bankers & Planters Mutual Insurance Association to recover on a benefit certificate in the sum of $450.

In September, 1916, the Bankers' & Planters' Mutual Insurance Association issued a benefit life certificate to Mary Archie, and her husband, Ed. Archie, was named as the beneficiary. She kept the dues paid thereon until the time of her death in August, 1919. The benefit certificate provided that the application for membership should be considered as a part of the contract for insurance. In the application, Mary Archie represented her age to be fifty-five years, and the date of her birth October 8, 1861. The policy was issued on November 22, 1916. The application for insurance constituted a warranty by the member of the facts stated therein, with regard to her age. Insurance policies could not be issued to persons over fifty-five years of age at their nearest birthday. After Mary Archie's death, proof of her death was made to the company according to the terms of the beneficiary certificate. Ed. Archie signed and swore to the proof of death, and in it stated the date of birth of Mary Archie to be October 8, 1854. This made her more than fifty-five years of age at the time she applied for the benefit certificate, and on that account the company declined payment. A representative of the company was sent to see Ed. Archie and made compromise with him in the sum of $145.30 instead of the $450 claimed by him.

Ed. Archie was a witness for himself. According to his testimony, his wife was not quite fifty-five years of age at the time she made the application for membership in the insurance company and for a benefit certificate therein. He admitted that he made out the proof of loss and stated her age to have been sixty-four at the time she made the application for membership and insurance, but said that he did so because the physician who attended his wife in her last illness told him that it was necessary to make proof of her death, but that her age was not ma-

terial; that the agent of the company came to see him after his wife's death and denied liability on the part of the company. The agent told him that the company did not owe him anything, and for that reason he accepted the compromise settlement and signed a release to the company of all claims against it. He details what occurred between him and the agent as follows:

"Q. Now then when did the agent of the company come to see you about this matter? Tell the jury there. Did he pay you anything in settlement of the claim or what did he tell you he was paying it for?

"A. Said he was just making me a present of a hundred dollars if I would accept that.

"Q. How came you to accept the hundred dollars and sign the release, if you did so?

"A. Well, he told me that the company was not indebted to me, didn't owe me anything, not a cent, not a copper, 'But I came to confer with you in the interest of the insurance on the policy of your wife,' and they didn't owe me anything, and hence, he made me believe that the policy was made void, and hence there was nothing due me and he said, 'Since I come in your home and see your face—I brought along a little money, and I am going to make you a present of a hundred dollars.' And that was my only salvation, according to his statement.

"Q. Now after he made those statements to you did you then accept the hundred dollars?

"A. Yes, sir."

A. N. Bohlinger was the agent of the company who made the terms with Ed. Archie. According to his testimony the death certificate showed the birth of Mary Archie to be in 1854 and the date of her birth, as stated in the application, was on October 8, 1861. According to the application, she was acceptable as a member of the insurance association, but, according to the death certificate, she was sixty years at the time she applied for membership in the association and was therefore beyond the age limit.

Bohlinger told Ed. Archie that the statement about her age was a material thing and asked him if he had stated it correctly in the death certificate. Archie replied that he had stated it correctly and that his wife was born in 1854. Bohlinger then told him that she was too old to have become a member of the order, and that the company did not owe him anything. Archie replied that she had paid her dues all the time, and that the company should have investigated about her age before the policy was issued. Bohlinger explained to him that the association relied entirely upon the warranties made by the applicant and told Archie that he would give him $100 in cash by way of compromise. He finally agreed to issue policies of insurance for three months for Archie's children and then took Archie's receipt for $145.30 in full settlement of the policy.

In rebuttal Archie showed by two witnesses that Bohlinger told Archie that he had come to confer with him about the insurance on his wife and told him that, because of misstatements in the application, the association did not owe him anything, but would give him $100 if he would accept it.

The case was tried before a jury which returned a verdict for the plaintiff. The case is here on appeal.

*Strait & Strait,* for appellant.

1. It was reversible error to refuse to give instruction No. 1 directing a verdict for appellant. The undisputed testimony shows that the association accepted no colored risks over fifty-five years of age and the statements as to age and health were warranties and being untrue were a fraud and avoids the policy and appellant owed appellee nothing. No fraud in procuring the settlement is pleaded to avoid the compromise adjustment. The compromise settlement constituted a bar to maintain this suit and was a settlement of the whole controversy. 5 R. C. L. 878; 10 L. R. A. 125. The settlement of a doubtful or disputed claim by compromise is a good consideration and is a bar to any suit thereon. 5 L. R.

A. (N. S.) 725; 25 *Id.* 275; 20 L. R. A. 115; 74 Ark. 270. The fact that a claim is disputed is a sufficient sonsideration to support a compromise. 74 Ark. 270; 114 *Id.* 559; 191 S. W. 402; 18 Ark. 214; 101 *Id.* 335; 46 *Id.* 217; 63 *Id.* 259; 99 *Id.* 588.

2. No fraud was alleged in the complaint and no offer to rescind by refunding the money paid was ever made to the association. A condition precedent on a claim which has been compromised is the restoration of the amount paid on compromise. One who settles a claim for less than its face can not rescind the settlement for fraud and maintain a suit without first returning the money received. 62 Ark. 274; 15 *Id.* 51; 70 *Id.* 249. The compromise settlement was binding and a final adjustment of the whole matter, and no offer to refund the money paid was made, and appellee is barred to maintain the suit·

*Sellers, Gordon & Sellers,* for appellee.

The whole controversy turns upon the question as to whether or not deceased at the time of making the application was within the age limit fixed by the company, and the company by its agent recognizes that as being correct. The proper allegations of fraud were made in the complaint, and there was sufficient testimony to have permitted the question to go to a jury as to whether or not the settlement was procured by fraud. A settlement procured by fraud is not binding. 74 Ark. 270; 46 *Id.* 217; 99 *Id.* 588; 83 *Id.* 210; 14 S. W. 769. None of the cases cited by appellant are in point. The case was submitted upon proper instructions, and there is legal evidence to support the verdict and it is conclusive on appeal.

HART, J. (after stating the facts). We set out the testimony somewhat in detail because it is earnestly insisted by counsel for the defendant that the evidence is not sufficient to support the verdict.

It was the contention of the plaintiff that the compromise was effected by fraudulent conduct and misrep-

resentation on the part of Bohlinger. Counsel for the defendant insists that there is no testimony upon which to submit this question to the jury, and this in contention we think counsel is correct. In her application, the insured stated her age to be under fifty-five. Persons over the age of fifty-five were not eligible to membership in the association, and benefit certificates could not be issued to them. Ed. Archie admitted that he stated her age in the proof of death to have been sixty at the time she applied for membership in the association. He said that the physician who was helping to make out the proof of death said that her age was not material, and that, because he did not remember her age at the time, he stated that she was born in 1854; when in truth she had not been born until October 8, 1861. This, however, was sufficient for a *bona fide* contention as to whether she had stated her age correctly in her application for insurance, and the association had a right to investigate the question and to make a compromise of the matter if it in good faith believed that her age had been misrepresented in the application. The compromise of a disputed claim furnishes sufficient consideration to uphold the terms of a compromise, even though the asserted claim is without merit and could not have been sustained in the courts. *First Natl. Bank of Mena* v. *Allen*, 141 Ark. 328.

The only testimony which it is insisted tends to show that the compromise was effected by fraud is that the agent went to Archie and told him that the representations made by him in the proof of death to the effect that Mary Archie was born in 1854 rendered the policy void.

It is insisted that this contention made to an illiterate negro was a badge of fraud. We do not think so. There is nothing to indicate that the agent in any way overreached Archie or made any false representations to him in order to effect the compromise. The offer was made in good faith, and the record shows that there was a dispute between the parties on the question of the age of the applicant at the time the benefit certificate was is-

sued. There is nothing in the record to show that the contention of the company was not made in good faith, and the fact that it was made to an illiterate negro does not constitute a badge of fraud. If such was the case, the company could not compromise at all in a case like this. We do not think the evidence warranted the submission of the issue of fraud in securing the compromise to the jury, and for the error in so doing the judgment must be reversed.

The plaintiff has been paid the full amount of the compromise, and the cause of action will be dismissed.